UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MISSOURI
EASTERN DIVISION

| | |
|---|---|
| CITY OF CLARKSON VALLEY, et al., | ) |
| | ) |
| Plaintiffs, | ) |
| | ) |
| vs. | ) Case No. 4:04CV301 RWS |
| | ) |
| NORMAN Y. MINETA, et al., | ) |
| | ) |
| Defendants. | ) |

## MEMORANDUM AND ORDER

This matter is before me on the parties' cross motions for summary judgment. The City of Clarkson Valley, Missouri, and its mayor, Scott Douglass (collectively, "Clarkson Valley"), allege that the Secretary of Transportation of the United States, Norman Y. Mineta, and the Director of the Missouri Department of Transportation, Dave Snider (collectively, the "United States"), have violated the procedural requirements of the National Environmental Policy Act ("NEPA"), 42 U.S.C. § 4321 *et seq.*, because they did not adequately assess the environmental and social effects of the construction of sound walls adjacent to a highway within the City of Clarkson Valley. Clarkson Valley seeks to prevent the construction of the sound walls and also seeks an order directing Secretary Mineta, in his official capacity, to prepare an Environmental Impact Statement ("EIS") pursuant to 42 U.S.C. § 4332.

The United States argues that judgment should be entered in its favor becuase it has complied with the requirements of NEPA. The United States assessed the potential environmental effects of the sound walls and issued a Finding of No Significant Impact ("FONSI"). The United States argues that when a FONSI is properly issued, NEPA does not require the preparation of an EIS.

For the reasons stated below, I will enter judgment in favor of the United States.

**I.     BACKGROUND**

*A.     The 1986 Final Environmental Assessment*

In the mid-1980's, the Missouri Department of Transportation ("MoDOT"), determined that it was necessary to widen a portion of Missouri State Route 340, locally called Clarkson Road, from two to five lanes in order to handle current and forecasted traffic volume. On May 13, 1986, the Missouri Highway and Transportation Department ("MHTC") submitted a Final Environmental Assessment ("FEA") to the Federal Highway Administration ("FHWA") regarding the proposed improvement, which was independently evaluated and accepted by the FHWA as a FONSI.[1] The FEA specifically addressed the social, economic, and environmental effects of the proposed improvement and concluded there would be no significant adverse impact as a result of the proposed improvement.

The 1986 FEA found that the noise levels adjacent to the proposed improvement were predicted to increase. Under the terms of the FEA, noise level impact was to be considered and a noise study report was to be developed during the design stage.[2] However, no noise study report was developed during the design stage of the proposed improvement. MoDOT is not aware of the reason why the noise study report was not completed at that time.

The widening of Clarkson Road was undertaken in the mid-1990's and was completed in 2000. In 1999, MoDOT personnel reviewed the 1986 FEA and found that a noise study should

---

[1] A FONSI is "a document by a Federal agency briefly presenting the reasons why an action . . . will not have a significant effect on the human environment and for which an environmental impact statement therefore will not be prepared." 40 C.F.R. § 1508.13.

[2] Noise studies are required under 23 C.F.R. § 772.9(a).

have been completed for the Clarkson Road project. In 2000, the firm George Butler Associates, Inc. ("GBA"), began a noise study for MHTC, which was finalized in 2001. The 2001 noise study concluded that many locations along Clarkson Road met MHTC's criteria for noise abatement.

### B. *Discussions Between the United States and the Residents of Clarkson Valley*

In September 2001, one of Clarkson Valley's aldermen spoke with MoDOT about the traffic noise along Clarkson Road, especially for the Forest Hills subdivision. Some of the residents whose properties were adjacent to Clarkson Road wanted relief from traffic noise. The MoDOT project manager told the alderman that the area met the criteria for noise abatement and that MoDOT would need approval from the impacted residents for the construction of sound walls.[3]

On October 1, 2001, the "impacted residents," Mayor Scott Douglass, and the President of the Board of Trustees for the Forest Hills Subdivision signed a petition requesting the installation of sound walls adjacent to Clarkson Road. As a result, MoDOT obtained funding and programmed a sound wall project. The project provided for the construction of three sound walls to be built along Clarkson Road, two of which were to be located within Clarkson Valley and one was to be located in the City of Ballwin.

After MoDOT programmed the sound wall project, the City of Clarkson Valley and

---

[3]The regulations covering noise abatement state, "[t]he views of the impacted residents will be a major consideration in reaching a decision on the reasonableness of abatement measures to be provided." 23 C.F.R. § 772.11(f). The United States interprets the term "impacted residents" to mean "those [residents] with sound levels of at least 66 [decibels] who would receive a benefit from the sound wall." Administrative Record, p. 386.

Mayor Scott Douglass changed their position on the construction of sound walls. In July 2002, the Clarkson Valley City Council voted to officially oppose the sound wall project. The primary concerns cited were the aesthetics of sound walls in general, decreased property values, increased sound levels on the opposite side of the road due to reflected sound, and the fact that not all homes along Clarkson road would receive sound walls due to the fact that many driveways and side streets would prevent sound wall placement.

One major objection voiced by the City Council and some area residents was that they believed that MoDOT had not considered the views of the "impacted residents" in compliance with the controlling regulations. The City of Clarkson Valley considers itself and each of its citizens to be "impacted residents" under § 772.11(f). As stated above, the United States only considers those residents who suffer from excessive noise and would benefit from the sound walls to be "impacted residents." I find the United States's definition of "impacted resident" to be reasonable, and I will adopt it for the purposes of this Memorandum and Order.

In Fall 2002, the MoDOT area engineer began meeting with a citizen's advisory committee comprised of Mayor Scott Douglass, two aldermen, and three residents of Clarkson Valley to address their concerns. These meetings were held on September 16, 2002; October 23, 2002; February 10, 2003; and July 14, 2003.

On September 24, 2002, there was a town hall meeting where FHWA and MoDOT representatives attended, gave a presentation, and answered questions from concerned residents. The presentation included information about traffic noise in general as well as specific information about the proposed sound wall project. Approximately sixty to seventy residents attended the meeting, many of whom expressed opposition to the project.

This lawsuit was filed on March 12, 2004. From Fall 2002 through July 2005, MoDOT met with Clarkson Valley residents and politicians to address their concerns and attempt to reach a mutually agreeable outcome regarding the construction of sound walls. On April 19, 2005, Clarkson Valley, MoDOT, and the FHWA participated in mediation proceedings without success. A public hearing was held on June 1, 2005. No agreement was reached.

The record is clear that the impacted residents specifically requested the construction of sound walls on October 1, 2001. In subsequent meetings, those residents continued represent to the United States that they desired the construction of sound walls.

### C. *The Final Supplemental Environmental Assessment*

In October 2005, the United States issued the Final Supplemental Environmental Assessment (the "FSEA") and a new FONSI. In the course of preparing the FSEA, a second noise study was prepared by Bowlby and Associates, Inc. ("Bowlby"), which was completed in January 2005. The 2005 noise study found three areas along Clarkson Valley Road that qualified for noise abatement. Bowlby recommended that MoDOT construct a series of sound walls to abate the noise.

The FSEA analyzed and compared several alternative courses of action to the construction of sound walls, including doing nothing. The FSEA contains an in-depth analysis of the alternatives, which include reducing speed limits, constructing earth berms, using open-graded asphalt, or using a rubberized asphalt mix. The FSEA concludes that each of the alternative courses would not eliminate enough noise to be effective.

In the course of preparing the FSEA, MoDOT contracted with Development Strategies, a real estate appraisal firm, to examine the possible effects that sound walls constructed along major

highways may have on residential property values in St. Louis's West County area.  Development Strategies researched the prices that homes were sold for before sound walls were constructed and the prices those homes were resold for after the sound walls were constructed in several areas of central West County.  Development Strategies also researched home sales in Clarkson Valley against those in central West County to compare value trends of the affected subdivisions to the overall market and the area where the new sound walls are proposed.  After concluding the study, Development Strategies determined that there is no measurable impact on property values from the existence of sound walls in proximity to homes in West County.

The FSEA discusses the visual and aesthetic impacts from the sound walls.  The FSEA notes that the visual appearance of the sound walls can be enhanced by planting trees in front of them and planting vines that will grow over the walls.  Additionally, earth tones can be used to create harmony between the walls and their natural surroundings.

Finally, the FSEA notes that harm to animal life is possible from the construction of sound walls.  Sound walls may block the normal movements of the animals, forcing them into the highway.  The FSEA contemplates that harm to animal life may be reduced by inserting breaks in the walls to allow animals to pass through, especially if the breaks are positioned in areas that may act as natural funnels for animal movement.

### III.   PROCEDURAL HISTORY

Clarkson Valley's original complaint, which was filed on March 12, 2004, only alleges deficiencies to the 1986 FEA.  However, because the United States prepared the FSEA, Clarkson Valley's allegations regarding the 1986 FEA are moot.  The FSEA is the final agency action under review.

On July 20, 2006, I held an informal status conference to discuss the impact of the FSEA on Clarkson Valley's complaint. At the status conference, the parties agreed to file a stipulation with the Court to the effect that I may consider the complaint and the answers to the complaint as addressing the FSEA instead of the 1986 FEA. The parties have now filed a stipulation to that effect. Specifically, the parties stipulate that "the Plaintiffs' Complaint is hereby amended by interlineation as necessary to set forth the amended claims in order to allow the court to have the prerequisite jurisdiction to review the FSEA and to issue a decision." The parties further stipulate that the issues pertaining to the FSEA have been adequately briefed in their summary judgment papers.

I find that it is in the interests of judicial economy to accept the parties' stipulation as a supplemental pleading under Fed. R. Civ. P. 15(d). As a result, I will consider the complaint as if its allegations pertained to the FSEA, and I will consider the administrative record as it is now on file with the Court in conjunction with the respective motions for summary judgment and supporting memoranda as fully presenting and briefing the issues that I must decide to resolve the pending dispute between the parties.

## IV. STANDARD OF REVIEW

Clarkson Valley brings this action pursuant to the Administrative Procedures Act, 5 U.S.C. § 701 *et seq*. Under the APA, I am required to "review [the agency's] FONSI decision under an arbitrary and capricious standard with a concern to determining whether [the agency] considered the relevant factors or made a 'clear error of judgment.'" Sierra Club v. U.S. Forest Service, 46 F.3d 835, 838 (8th Cir. 1995) (quoting Citizens to Preserve Overton Park, Inc. v. Volpe, 401 U.S. 402, 416 (1971)). Under NEPA, I must affirm the agency decision if I "find the

[agency] took a 'hard look' at the project, identified the relevant areas of environmental concern, and made a convincing case for its FONSI." Id. "[I am] not free to substitute [my] own judgment for that of the agency, but rather [my] role is to 'ensure that the agency has adequately considered and disclosed the environmental impact of its actions.'" Arkansas Wildlife Federation v. U.S. Army Corps of Engineers, 431 F.3d 1096, 1100 (8th Cir. 2005) (quoting Mid States Coalition for Progress v. Surface Trans. Bd., 345 F.3d 520, 534 (8th Cir.2003)).

## V. THE CROSS MOTIONS FOR SUMMARY JUDGMENT

In the complaint, Clarkson Valley alleges that it will incur serious damages if sound walls are constructed adjacent to Clarkson Road, including an increase in pollution, harm to the local plants and animals, loss of green space, a decrease in residential property values, loss of tax revenue, the "disintegration" of the community, and emotional and psychological damage to the residents of Clarkson Valley.

Clarkson Valley argues in its motion for summary judgment that the data compiled by MoDOT and the FHWA and formalized in the FSEA are deficient and do not provide a satisfactory explanation for the decision to construct sound walls. Clarkson Valley further argues that the sound walls proposed by the United States exceed the monetary limit self imposed by the United States. Clarkson Valley requests that I order the United States to prepare an EIS and that I enter an order enjoining the United States from constructing sound walls.

The United States argues that judgment should be entered in its favor because it followed the procedural requirements of NEPA. I agree with the United States, and I will enter judgment

in its favor.[4]

## VI. ANALYSIS

NEPA imposes only procedural requirements on governmental agencies. <u>Vermont Yankee Nuclear Power Corp. v. Natural Resources Defense Council, Inc.</u>, 435 U.S. 519, 558 (1978). "NEPA does not work by mandating that agencies achieve particular substantive environmental results." <u>Marsh v. Oregon Natural Resources Council</u>, 490 U.S. 360, 371 (1989).

NEPA requires that an EIS be prepared for all "major Federal actions significantly affecting the quality of the human environment." 42 U.S.C. § 4332(C); <u>Sierra Club</u>, 46 F.3d at 837. In order to determine whether it is necessary to prepare an EIS, the agency may prepare an Environmental Assessment ("EA"). 40 C.F.R. § 1501.4. If, based on the EA, the agency determines that it is unnecessary to prepare an EIS, the agency may prepare a FONSI. <u>Id.</u>

An EA is a "concise public document" that provides evidence and analysis for determining whether to prepare an EIS or a FONSI. 40 C.F.R. § 1508.9(a). "An EA analyzes and compares several alternative courses of action, including doing nothing, the "No Action" alternative. The purpose of the document is to assist in determining whether any of the proposed actions will significantly affect the environment." <u>Sierra Club</u>, 46 F.3d at 837 (citing 40 C.F.R. § 1508.9).

Clarkson Valley argues that the FSEA is deficient because it relies on a sound study performed in 1978 to support its conclusion that sound walls should be constructed. Clarkson

---

[4]The United States previously filed a motion to dismiss under Rule 12 for lack of standing. I denied that motion because the factual record was insufficient to determine whether Clarkson Valley met the requirements for Constitutional standing. The United States states in its memorandum in support of its motion for summary judgment that it renews its motion to dismiss for lack of standing. The memorandum, however, does not contain any citations to the record in support of its argument that Clarkson Valley lacks standing.

Valley further argues that the FSEA is deficient because MoDOT did not perform a sound study prior to the expansion of Clarkson Road. Clarkson Valley's arguments lack any factual or legal support.

I find that the United States complied with the procedural requirements of NEPA when it issued the FSEA/FONSI. The United States considered several alternative courses of action, including taking no action. 40 C.F.R. § 1508.9. The United States performed proper noise studies. 23 C.F.R. § 772.9. The United States considered the "views of the impacted residents . . . in reaching a decision on the reasonableness of abatement measures to be provided." 23 C.F.R. § 772.11(f).

Clarkson Valley's final argument is that the cost of the sound walls will be higher than the amount MoDOT allows, i.e., $30,000 per affected residence. This argument is unsupported by the record.

The FSEA discusses several sound wall designs for each affected area. Some of the designs exceed MoDOT's $30,000 criterion, but for each affected area, there is at least one design that is less than or equal to $30,000. As a result, I find that the cost of the sound walls is reasonable.

The administrative record shows that the United States "took a 'hard look' at the project, identified the relevant areas of environmental concerns, and made a convincing case for its FONSI." Sierra Club, 46 F.3d at 838. As a result, I will grant summary judgment in favor of the United States.

Accordingly,

**IT IS HEREBY ORDERED** that the United States' motion for summary judgment [#36]

is **GRANTED**.

**IT IS FURTHER ORDERED** that Clarkson Valley's cross motion for summary judgment [#41] is **DENIED**.

Dated this <u>17th</u> Day of August, 2006.

_____
RODNEY W. SIPPEL
UNITED STATES DISTRICT JUDGE